```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                         CHARLESTON
```

**DONNA L. KIDD,**

    **Plaintiff,**

**v.**                                    **CASE NO. 2:04-cv-00685**

**JO ANNE BARNHART,**
**Commissioner of Social Security,**

    **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the court are cross-motions for judgment on the pleadings.

Plaintiff, Donna L. Kidd (hereinafter referred to as "Claimant"), protectively filed an application for SSI on September 10, 2002, alleging disability as of March 19, 1996, due to nerves, a back impairment and thyroid disease. (Tr. at 53-57, 68.) The claim was denied initially and upon reconsideration. (Tr. at 31-35, 39-41.) On July 17, 2003, Claimant requested a hearing before

an Administrative Law Judge ("ALJ"). (Tr. at 42.) The hearing was held on September 24, 2003, before the Honorable Richard Maddigan. (Tr. at 413-31.) By decision dated November 22, 2003, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-22.) On May 6, 2004, the Appeals Council determined that new evidence offered by the Claimant did not provide a basis for changing the ALJ's decision. (Tr. at 6-9.) On July 6, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920 (2003). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers

from a severe impairment. Id. § 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2003). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

    In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at

15.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of mild diabetes mellitus, diet controlled obesity, mild hypertension, arthritic pains in the hands, depression and anxiety.  (Tr. at 17.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 17-18.)  The ALJ then found that Claimant has a residual functional capacity for sedentary work, reduced by nonexertional limitations.  (Tr. at 20.)  As a result, Claimant cannot return to her past relevant work.  (Tr. at 20.)  Nevertheless, the ALJ concluded that Claimant could perform the job of receptionist, which exists in significant numbers in the national economy.  (Tr. at 21.)  On this basis, benefits were denied.  (Tr. at 22.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)).

Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was forty-two years old at the time of the administrative hearing.  (Tr. at 53, 413.)  Claimant graduated from high school.  (Tr. at 421.)  In the past, she worked as a cashier and clerk at a video store.  (Tr. at 421.)

<u>The Medical Record</u>

The court has reviewed all evidence of record, including the medical evidence of record.  Claimant's only challenge to the ALJ's decision relates to his handling of Claimant's mental impairments.  As such, the court will briefly summarize that evidence of record in the order it appears in the record.

<u>Evidence before the ALJ</u>

The record includes treatment notes from John Cook, D.O. dated February 4, 2002, through May 16, 2002.  Dr. Cook, who treated Claimant for a variety of physical impairments, noted that Claimant

suffered from depression and anxiety. He prescribed Effexor and Buspar. (Tr. at 115, 116.) Dr. Cook completed a West Virginia Department of Health and Human Resources, General Physical (Adults) form on September 11, 2002, and noted a diagnosis of anxiety and depression. He noted that Claimant received treatment at Shawnee Hills. (Tr. at 129-30.)

On November 16, 2002, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe. (Tr. at 132-45.)

The record includes treatment notes from Ted Thornton, M.D. of Highland Behavioral Health, Inc. dated September 11, 2002, through June 16, 2003. Dr. Thornton diagnosed depression and consistently noted Claimant's GAF at 60. Claimant improved with medication. (Tr. at 180-87.)

On June 30, 2003, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe. (Tr. at 188-201.)

On August 19, 2003, Ziad Chawaa, M.D. completed a West Virginia Department of Health and Human Resources, General Physical (Adults) form and diagnosed depression and anxiety, among others. Dr. Chawaa stated that Claimant could not perform her customary occupation and that she was not trained for other work. Dr. Chawaa noted that Claimant "reports symptoms controlled well with Buspar, Effexor and Clonazepam." (Tr. at 337.)

6

On September 16, 2003, Sheila Emerson Kelly, M.A. examined Claimant at the request of her counsel. Claimant reported that she has difficulty sleeping, but that medications helped this condition. (Tr. at 357.) Claimant's mood was moderately depressed and bored. (Tr. at 357.) Claimant reported taking care of day-to-day affairs and occasionally cleaning her own apartment. Claimant reported no friends other than her boyfriend, but has lunch with her sister about once a week and talks to her landlord "a lot" on the telephone. Claimant visits with her boyfriend three or four times per week. Claimant went four-wheeling with her boyfriend and goes to flea markets or the movies. (Tr. at 356.) In the past, Claimant visited her mother once per week, but more recently had only visited her once a week. Ms. Kelly diagnosed depressive disorder, not otherwise specified, chronic and anxiety disorder, not otherwise specified on Axis I and dependent personality traits on Axis II. (Tr. at 360.) She opined that Claimant had not been employed for approximately eleven years and that it was "highly unlikely that she is going to re-enter the workforce at this point. She is depressed, socially anxious, and has a variety of medical problems." (Tr. at 360.)

Ms. Kelly completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) and opined that Claimant had a poor ability to perform activities within a schedule, maintain regular attendance and be punctual, complete a normal workday or

workweek and perform at a consistent pace, but that she had fair to good abilities in all other areas. (Tr. at 363-64.)

The record includes an additional treatment note from Dr. Thornton dated September 12, 2003. (Tr. at 365.) Claimant reported her nerves had been worse lately, but that Buspar "definitely helps." (Tr. at 365.) Claimant's depression continued to improve, and Dr. Thornton continued to rate Claimant's GAF at 60. (Tr. at 365.)

On November 3, 1999, Dr. Chawaa completed a West Virginia Department of Health and Human Resources, General Physical (Adults) form. He noted that Claimant's depression was stable. (Tr. at 385.) He opined that Claimant might be capable of working in a sitting position. He opined she was capable of sedentary work. (Tr. at 386.)

Evidence Submitted to the Appeals Council

Claimant submitted treatment notes from Manual T. Uy, M.D. dated October 7, 2002, through January 5, 2004. Dr. Uy diagnosed diabetic neuropathy. (Tr. at 410-12.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in rejecting the opinions of Dr. Thornton, her treating physician, and Ms. Kelly, a consultative examiner; (2) the Appeals Council erred in finding that the ALJ's decision would not have been different

had the new evidence submitted by Claimant been before him. (Pl.'s Br. at 4-6.)

The Commissioner argues that (1) substantial evidence supports the ALJ's determination that Claimant was not disabled; (2) the ALJ properly weighed the opinion of Ms. Kelly; and (3) the determination of the Appeals Council that the new evidence offered by Claimant does not provide a basis for changing the ALJ's decision is supported by substantial evidence. (Def.'s Br. at 5-8.)

Claimant first argues that the ALJ erred in weighing the medical evidence of record related to Claimant's mental impairments. Claimant argues that the ALJ "characterized the claimant's symptoms of depression as 'mild symptoms.' (Record at p. 19) However, he then notes that the GAF of 60 found by the treating physician [Dr. Thornton] indicates 'moderate depressive symptoms.' Id." (Pl.'s Br. at 4.) Claimant goes on to argue that the ALJ improperly rejected the opinion of Ms. Kelly. Claimant asserts that the findings of Dr. Thornton and Ms. Kelly were not inconsistent and that they support a finding of disability. Claimant asserts that the ALJ substituted his own medical opinion for that of Dr. Thornton. (Pl.'s Br. at 5.)

In his decision, the ALJ determined that Claimant's depression and anxiety were severe impairments. (Tr. at 17.) In evaluating the "B" criteria at step three of the sequential analysis, he

concluded that Claimant had a mild limitation in activities of daily living, a mild limitation in social functioning, a mild degree of limitation in concentration, persistence and pace, and no episodes of deterioration or decompensation. (Tr. at 17-18.) The ALJ acknowledged Claimant's subjective complaints related to her mental impairments (Tr. at 19), and concluded that Claimant's residual functional capacity for the full range of sedentary work was reduced by a limitation to perform simple, routine work instructions in a low stress environment (Tr. at 20).

In explaining the weight afforded the evidence of record related to Claimant's mental impairments, the ALJ noted that Dr. Thornton's treatment notes indicate treatment

> for mild symptoms of depression. Diagnosis included major depressive disorder and a Global Assessment of Functioning (GAF) of 60. (A GAF score of 60 indicates moderate depressive symptoms, see DSM-IV, at page 32). (Exhibits 10F and 30F). In a consultative psychological evaluation and report dated September 16, 2003, Ms. Kelly found significant limitations based upon claimant's emotional complaints and symptoms, despite few clinical findings (Exhibit 29F). I reject the conclusions found in Ms. Kelly's report as they are inconsistent with all reports from claimant's treating physicians. I reject the allegations of claimant's symptoms to the extent alleged or that they would interfere with consistent attendance as they are inconsistent with the level of claimant's prior reported daily activities and lack of any current evidence in support of this finding. Thus, the objective findings and testimony do not support the extent of her complaints, at least as to her allegations of being disabled.

(Tr. at 19.)

The court proposes that the presiding District Judge find that

the ALJ's findings related to Claimant's mental impairments are supported by substantial evidence. The ALJ properly weighed this evidence in keeping with applicable case law and regulations. See Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996) (a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence"); 20 C.F.R. § 416.927(d)(3), (4), and (5) (2003) (in evaluating medical opinions, the ALJ should consider factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty)).

 Contrary to Claimant's assertions, the ALJ's characterization of Claimant's symptoms of depression as "mild" was not in error. In his mental status exams, Dr. Thornton consistently noted that Claimant interacted well, had direct eye contact, was appropriate in appearance, was somewhat affected and that her mood ranged from sometimes dysphoric to euthymic. (Tr. at 366, 368, 370, 372, 374.) Moreover, the ALJ acknowledged Dr. Thornton's opinion that Claimant's GAF was 60, which as the ALJ correctly noted in his

11

decision (Tr. at 19), represents "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).

Claimant's suggestion that Dr. Thornton's opinion that Claimant's GAF was 60, representing moderate symptoms, is consistent with Ms. Kelly's findings in her report and on the Assessment, is not convincing. Ms. Kelly found much more severe limitations. As the ALJ explained in his decision, those limitations are not consistent with the treatment notes of Dr. Thornton indicating improvement in Claimant's condition. Nor did the other physicians of record who examined or treated Claimant opine such severe limitations. Dr. Chawaa never identified Claimant's mental condition as disabling, and Claimant reported to him that her symptoms were controlled by medications. (Tr. at 337.) In addition, as is evidenced in the ALJ's findings regarding the "B" criteria at step two of the sequential analysis, Claimant was not significantly limited in any of the four areas of functioning. 20 C.F.R. § 416.920a (2003). She engaged in a variety of daily activities, had a boyfriend and had social contact with her family members. Notably, the State agency medical sources consistently opined that Claimant's mental impairments were not

severe. While the ALJ declined to adopt these opinions, the ALJ's determination that Claimant's mental impairments reduced her residual functional capacity by requiring jobs involving simple, routine work instructions in a low stress environment is supported by substantial evidence, and the court proposes that the presiding District Judge so find.

Claimant next argues that the Appeals Council erred in failing to find that the ALJ's decision would have been different had the evidence from Dr. Uy been before him, particularly the diagnosis of diabetic neuropathy. (Pl.'s Br. at 5.)

The Appeals Council specifically incorporated the evidence from Dr. Uy into the administrative record. As a result, the court must review the record as a whole, including the new evidence, in order to determine if the Commissioner's decision is supported by substantial evidence. Wilkins v. Secretary, 953 F.2d 93, 96 (4th Cir. 1991).

Despite Dr. Uy's diagnosis of diabetic neuropathy, there is nothing in his treatment notes that would suggest the ALJ's decision might have been different had this new evidence been before him. Dr. Uy's treatment notes are brief, do not contain much in the way of clinical or diagnostic objective evidence and provide no indication that this condition resulted in functional limitations in addition to the already significant limitations found by the ALJ. As such, the court proposes that the presiding

13

District Judge find that the decision of the Appeals Council that the new evidence from Dr. Uy did not provide a basis for changing the ALJ's decision is supported by substantial evidence.

Claimant refers to other evidence that he believes was before the Appeals Council, including evidence from George Zaldivar, M.D. that, according to Claimant, shows she has fatigue due to obstructive sleep apnea and has been prescribed oxygen. (Pl.'s Br. at 5.) In addition, Claimant represents that Dr. Thornton submitted a Medical Source Statement that "found the claimant significantly more limited and impaired than did consulting Psychologist Kelly." (Pl.'s Br. at 6.)

The purported evidence from Dr. Zaldivar and Dr. Thornton is not contained in the administrative transcript and does not appear to have been submitted to or considered by the Appeals Council. Beyond referring to it in her Motion, Claimant did not file a reply or submit this evidence in support of a motion to remand pursuant to sentence six of 42 U.S.C. § 405(g). Because this evidence was neither before the ALJ nor the Appeals Council, this court cannot consider it, and the court proposes that the presiding District Judge so find.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge DENY the Plaintiff's Motion for Judgment on the Pleadings, GRANT the Defendant's Motion for Judgment on the Pleadings, AFFIRM the final decision of the

Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable David A. Faber, Chief Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Chief Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

<u>June 10, 2005</u>  
Date

*Mary E. Stanley*  
Mary E. Stanley  
United States Magistrate Judge